## HEWITT *v.* STORY *et al.*

*(Circuit Court, S. D. California.* June 13,

IRRIGATION—APPROPRIATION—ABANDONMENT.

Certain persons appropriated, by means of the B. ditch, the water remaining in a stream after two prior appropriations. The supply proving insufficient after several years, they each purchased a certain number of shares in the T. ditch and the water appropriated by it, and diverted the same to the B. ditch. After a time other shareholders in the T. ditch also, by permission, diverted their water through the B. ditch, and finally the T. ditch was abandoned, and all the water taken through the B. ditch. Thereafter for many years the entire amount of water taken through the B. ditch was distributed in proportion to the ownership of shares in the T. ditch appropriation, without regard to the original appropriation by means of the B. ditch. *Held,* that this constituted an abandonment by the original appropriators and their successors of their claim to the water originally taken by the B. ditch.

In Equity. Bill by Isaac L. Hewitt against Warren Story and others to establish a right to take certain water for irrigation and other purposes, and to restrain interference therewith. Bill dismissed.

For prior reports, see 39 Fed. Rep. 158, 719.

*Rowell & Rowell, John A. Wright, A. W. Thompson,* and *Brousseau & Hatch,* for complainant.

*George E. Otis, H. C. Rolfe, Byron Waters, Curtis & Otis,* and *R. E. Houghton,* for defendants.

Ross, District Judge. I have examined the voluminous record in this case with care, and am of the opinion that the averments of the bill as amended are not sustained by the evidence. The complainant's contention is that he is the owner, and entitled to be protected in the use, of 333⅓ inches, measured under a 4-inch pressure, of the waters of the Santa Ana river, which he alleges were appropriated by his predecessors

in interest through and by means of a ditch called the "Berry Roberts Ditch," the use of which he and they continuously enjoyed until the alleged wrongful interference therewith by the defendants shortly before the commencement of this suit. To review in detail the evidence, which embraces more than 2,300 pages, would serve no useful purpose; nor, in the view I take of the case, is it necessary to make any reference to a very large part of it. The case shows that prior to the appropriation under which the complainant claims two appropriations of the waters of the river had been made,—one by means of a ditch called the "North Fork Ditch," tapping the river not far from where it debouches from the mountains into the San Bernardino valley; and the other, called the "South Fork" or "Timber" ditch, which took water from the same side of the river, (the north side,) but some distance lower down. The respective parties to this suit are not agreed, and the evidence is conflicting, in respect to the quantity of those two appropriations; but, in my view of the case, that is not a matter of importance here. The appropriation upon which the suit is based was made by Berry Roberts, Henry Suverkrup, and George A. Craw in the year 1869, and was of the "waste water" of the river, by which, I think, from the evidence, was intended the water remaining after the North Fork and Timber ditches should be supplied. The ditch through which they appropriated this waste water tapped the river on its south side, and between the head of the North Fork ditch and that of the Timber ditch. They designated their ditch the "Berry Roberts Ditch." Roberts, Suverkrup, and Craw at the time occupied and claimed separate and distinct portions of section 16, township 1 S., range 3 W. of the San Bernardino meridian; Roberts claiming 160 acres, and Suverkrup and Craw, in the aggregate, 240 acres, which were subsequently acquired by the complainant, as hereinafter stated. At the time of, and for many years after, the appropriation by Roberts, Suverkrup, and Craw, there was in existence in San Bernardino county a board of water commissioners created by an act of the legislature of the state to regulate the distribution of water in accordance with the rights of the parties in interest, with authority to appoint water overseers, etc. In the records of this board, referred to and relied on by both sides to this controversy, appears the following entry of date February 19, 1870:

"By request of Henry Suverkrup, Berry Roberts, and G. A. Craw, W. T. Morris and E. Kerfoot, water commissioners for San Bernardino county, California, located a water ditch to be known as the 'Berry Roberts Ditch.' The water claimed by the aforesaid parties for this ditch is the waste water of the Santa Ana river, taken out on the southeast bank of said river about four miles northeast from section sixteen, (16,) township No. 1 south, range No. 3 west, San Bernardino meridian, running thence nearly a southwest direction to the said sixteenth (16) section, and to be used for irrigating purposes, and to be equally apportioned among said parties on the land of the said sixteenth (16) section owned by said parties; and also Berry Roberts was appointed overseer for the aforesaid ditch for the present year.

"Done on the 19th day of February, A. D. 1870.

"W. T. MORRIS,<br>"E. KERFOOT."

**Under** this appointment Roberts took charge of the Berry Roberts ditch as water overseer, and through and by means of it Roberts, Suverkrup, and Craw conducted the waste water of the river so appropriated to their respective tracts of land in section 16 for irrigation and domestic uses. They had a few trees planted, a small garden, and a few acres in potatoes and corn, not exceeding in the aggregate 40 or 50 acres; and, in the aggregate, they cultivated in grain some 50 or 60 acres. They also permitted one or more of their neighbors to participate in the use of the water, conditioned upon their contributing to keep the ditch in repair. Roberts conveyed his interest in the 160 acres of land claimed by him, together with his interest in the Berry Roberts ditch and in the waste water, to one Ball in 1870, and Ball thereupon succeeded Roberts as overseer of the Berry Roberts ditch. Craw, whose tract of land contained 160 acres, conveyed his interest in it to Suverkrup in 1872. He testified (subject to objections on the part of the defendants as to the competency of the testimony) that he also sold to Suverkrup his interest in the Berry Roberts ditch and in the waste water. During the years 1870, 1871, and 1872 the parties owning these interests in the Berry Roberts ditch and in the waste water appropriated by means of it used the water when they could get it for the irrigation of the land they had under cultivation and for domestic purposes; but at times during those years, owing probably to evaporation and to the porous nature of the soil through which the water ran, the owners of the Berry Roberts ditch found that the waste water of the river was insufficient to supply their needs. Accordingly, Ball, who, as has been said, had succeeded to the one-third interest of Berry Roberts in the Berry Roberts ditch and in the waste water, and who had also succeeded him as overseer of that ditch, purchased 40 shares in the Timber ditch and in the water appropriated by means of it; and Suverkrup, who, in addition to his original one-third interest, the complainant claims had also succeeded to the one-third interest of Craw in the Berry Roberts ditch and in the waste water, purchased 30 shares in the Timber ditch and in the water appropriated by means of it. The water thus acquired by Ball and Suverkrup in the Timber ditch appropriation they diverted and conducted through and by means of the Berry Roberts ditch to their respective tracts of land in section 16. Subsequently, and with their consent, various of the other owners of shares in the Timber ditch appropriation diverted and conducted the water to which they were entitled by virtue of the Timber ditch appropriation through and by means of the Berry Roberts ditch. This ditch continued in charge of the successive water overseers appointed by the board of water commissioners. In June, 1874, Suverkrup conveyed his interest in the 240 acres then claimed and possessed by him, together with his interest in the Berry Roberts ditch and in the waste water, and together, also, with the 30 shares in the Timber ditch appropriation, to one Borron; and in October, 1881, Borron contracted to sell the same to the complainant, and executed to him a deed therefor in 1882. When Borron purchased in 1874 the land now owned by the complainant he went into possession of it, remaining in

personal possession something more than a year, and then put an agent in charge, who remained in possession for Borron until his sale and conveyance to complainant.    During all of the time that Borron owned the land, and at the time of complainant's purchase of it, there was but a small part of it under cultivation.    In 1874, Ball and Borron, as owners of shares in the Timber ditch appropriation, were diverting and using the water belonging to them as such share owners through the Berry Roberts ditch; and in that year some of the other owners of shares in the Timber ditch appropriation applied to them for permission to divert and conduct the water pertaining to their shares in the Timber ditch appropriation through the Berry Roberts ditch, which permission was accorded upon condition that the applicants should aid in enlarging and repairing the Berry Roberts ditch, which they did.    After 1874 no water was taken from the river through the Timber ditch, but all of the water theretofore diverted through and by means of that ditch was thereafter diverted through and by means of the Berry Roberts ditch, and many, if not all, of the owners of shares in the Timber ditch appropriation continued to use the water to which they were entitled by virtue of that appropriation through the Berry Roberts ditch.    It does not appear that permission to do so was granted to any considerable number of the shareholders in the Timber ditch appropriation by the then owners of the Berry Roberts ditch; but the case shows that (whether rightfully or wrongfully) the shareholders in the Timber ditch appropriation took possession and control of the Berry Roberts ditch, and through it diverted and conducted the water theretofore diverted and conducted by the Timber ditch; and that from at least as early as 1877 all of the water diverted and conducted through and by means of the Berry Roberts ditch was distributed by the water overseer in charge, and accepted and used by the respective claimants of it, including Ball and Borron, in proportion to the number of shares held by them, respectively, in the Timber ditch appropriation.    The Berry Roberts ditch was enlarged and kept in repair by the parties so using it, and in 1877, upon application made to the board of water commissioners, a change was made in its route and in the point of its diversion of water from the river, in order to avoid a sand wash and a consequent loss of water; the board of water commissioners at the same time directing that the ditch should be thereafter known as the "South Fork of Santa Ana" for irrigation purposes. This change was made by the parties using the water of the ditch, under the charge of the water overseer, Ball.  There was also a subsequent change in the ditch similarly made.    The water diverted and conveyed by means of this ditch continued to be allotted to the respective claimants to it in proportion to the number of shares held by them, respectively, in the Timber ditch appropriation.    It was so allotted and used during the more than five years of Borron's ownership that the witness Tolles acted as his agent, and it was so allotted and used continuously after the complainant's purchase in 1881–82.    It is true that there is evidence that both Borron and complainant from time to time asserted that they were entitled to the water embraced by the waste water appropriation;

but the mere assertion of such a claim, unaccompanied by acts in vindication and maintenance of it, is of no avail. The evidence, in my opinion, shows that this claim was not respected by the other parties using and in control of the Berry Roberts ditch and the water thereby diverted and conveyed, who at least as early as 1877 allotted all of the water diverted from the Santa Ana river by means of the ditch theretofore known as the " Berry Roberts Ditch" in proportion to the number of shares held by them in the Timber ditch appropriation. For more than five years immediately preceding complainant's purchase from Borron, the latter, through his agent, Tolles, acquiesced in and accepted such allotment of the waters of the Berry Roberts ditch. Such use and control of that ditch and allotment of its waters were wholly inconsistent with the claim that any part of the waters thereby diverted and conveyed was water embraced by the waste water appropriation. Borron's failure to continue the use of the water under that appropriation, and his acquiescence in and acceptance of the allotment of the waters diverted by and conveyed through the Berry Roberts ditch, in proportion to the shares held by the respective parties who assumed control of and maintained it in the Timber ditch appropriation, was a clear abandonment of the waste water appropriation. One of the essential elements of a valid appropriation of the waters flowing over the public lands is its use for some beneficial purpose, which use, of course, is to be referred to the claim under which it is exercised. Not only does the evidence show that the waste water appropriation upon which this suit is based was abandoned during its ownership by the complainant's grantor and predecessor in interest, Borron, but it shows also that the abandonment was acquiesced in by the complainant after his purchase. The waters of the ditch in question continued to be allotted to and used by the respective parties who controlled and maintained the ditch, including the complainant, in proportion to the number of shares held by them, respectively, in the Timber ditch appropriation, which use and control of the ditch and allotment of its waters were, as has been said, wholly inconsistent with the claim that any part of the waters thereby diverted and conveyed was water embraced by the waste water appropriation.

Finding, as I do, from the evidence, that there was an abandonment by the immediate grantor of the complainant, as well as by the complainant himself, of the water embraced by the appropriation upon which the suit is based, it becomes unnecessary to determine whether there could be, in view of the evidence in the case, any valid appropriation of $333\frac{1}{3}$ inches, measured under a 4-inch pressure, of the waters flowing over the public lands, for the irrigation of, and domestic use upon, complainant's 240 acres of land, or to decide any of the other points made by counsel. The bill, as amended, must be dismissed at complainant's cost; and it is so ordered.